**Nos. 22-1358**

**In the United States Court of Appeals
For the Tenth Circuit**

———————

BRYCE WATKINS,

*Plaintiff-Appellant,*

v.

BRIAN WUNDERLICH, KEVIN NICHOLS, TAMMY BLACK,

*Defendants-Appellees.*

———————

**On Appeal from the United States District Court for the District of Colorado**
Civil Action No. 1:20-cv-01172-RM-MEH
The Honorable Judge Raymond Moore

———————

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

———————

DAVID A. LANE
MICHAEL P. FAIRHURST
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax

*Attorneys for Plaintiff-Appellant*

**ORAL ARGUMENT IS REQUESTED**

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ....................................................................... iii

**ARGUMENT** .............................................................................................1

    **I.**    **Mr. Watkins has triable claims against Deputies Nichols and Black for unlawfully entering his home in violation of the Fourth Amendment** ..............................................................1

        **A.**    **Appellees entered Mr. Watkins' home for reasons wholly unrelated to aiding a victim of domestic violence** ..................2

        **B.**    **Appellees violated clearly established law by entering the home of Mr. Watkins despite knowing that he was a physically present occupant who had recently and explicitly objected to their entry** ...............................4

        **C.**    ***Fernandez* addressed a materially different issue: whether *Randolph* applies if the objecting occupant is not physically present at the home when another occupant consents** ..........6

        **D.**    **Appellees unsuccessfully attempt to complicate matters by introducing hypothetical factual scenarios that are not present here** ...............................................................8

    **II.**    **Appellees, acting in concert, subjected Mr. Watkins to significantly more force than Appellees claim. Mr. Watkins' only so-called resistance before Nichols tackled and choked him consisted of taking a few steps backwards up his stairs. Mr. Watkins' excessive force claim against Nichols, Wunderlich, and Black should not have been summarily judged** ..............................12

**CONCLUSION** .......................................................................................18

**CERTIFICATE OF COMPLIANCE** .....................................................19

**CERTIFICATE OF SERVICE** ..............................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page**

*Allen v. Muskogee, Okl.*,
   119 F.3d 837 (10th Cir. 1997) ...................................................................14, 15

*Bonivert v. City of Clarkston*,
   883 F.3d 865 (9th Cir. 2018) ...............................................................4, 5, 6, 11

*Cortez v. McCauley*,
   478 F.3d 1108 (10th Cir. 2007) .................................................................15, 18

*Cummings v. City of Akron*,
   418 F.3d 676 (6th Cir. 2005) ...........................................................................11

*Dixon v. Richer*,
   922 F.2d 1456 (10th Cir. 1991) ......................................................................14

*Fernandez v. California*,
   571 U.S. 292 (2014)..........................................................................2, 6, 7, 8

*Fisher v. City of Las Cruces*,
   584 F.3d 888 (10th Cir. 2009) .......................................................................16

*Georgia v. Randolph*,
   547 U.S. 103 (2006)......................................................................................1, 3

*Kentucky v. King*,
   131 S. Ct. 1849 (2011)....................................................................................13

*L.A. County v. Rettele*,
   550 U.S. 609 (2007)..................................................................................15, 18

*Lynch v. Bd. of Cty. Comm'rs*,
   786 F. App'x 774 (10th Cir. 2019) .................................................................15

*Medina v. Cram*,
   252 F.3d 1124 (10th Cir. 2001) ......................................................................14

*Morris v. Noe*,
  672 F.3d 1185 (10th Cir. 2012) ....................................................14, 15

*Payton v. New York*,
  445 U.S. 573 (1980)..........................................................................6

*Rozycki v. City of Champlin*, No. 15–589 (JRT/FLN),
  2016 WL 7493619 (D. Minn. Dec. 30, 2016) ...................................14

*Scott v. City of Albuquerque*,
  711 F. App'x 871 (10th Cir. 2017) ....................................................17

*Storey v. Taylor*,
  696 F.3d 987 (10th Cir. 2012) ...........................................................4

*Texas* v. *Brown,*
  460 U.S. 730, 103 S. Ct. 1535 (1983)..................................................3

*United States v. Davis*,
  290 F.3d 1239 (10th Cir. 2002) ..........................................................4

*United States v. Johnson*,
  656 F.3d 375 (6th Cir. 2011) ..............................................................4

*United States v. Jones*,
  701 F.3d 1300 (10th Cir. 2012) ........................................................11

*United States v. Montoya*, No. 15-cr-4080 WJ,
  2016 U.S. Dist. LEXIS 152828 (D.N.M. Nov. 2, 2016) .................4, 8

*United States v. Rodella*,
  804 F.3d 1317 (10th Cir. 2015) ........................................................17

*United States v. Tatman*,
  397 F. App'x 152 (6th Cir. 2010)......................................................4, 8

*United States v. Williams*,
  521 F.3d 902 (8th Cir. 2008) ...........................................................11

*Vinson v. Vermilion Cty.*,
    776 F.3d 924 (7th Cir. 2015) ...............................................................................11

*Walton v. Gomez (In re Estate of Booker)*,
    745 F.3d 405 (10th Cir. 2014) ...........................................................................16

## **ARGUMENT**

**I.** **Mr. Watkins has triable claims against Deputies Nichols and Black for unlawfully entering his home in violation of the Fourth Amendment.**

Appellees concede they knew that Bryce Watkins had refused to allow the police to enter his home before they first entered it. Rep.Br. 2-3. That simplifies matters. The key question involving Mr. Watkins' unlawful entry/search claim therefore becomes whether the police nonetheless were permitted by the Fourth Amendment to enter Mr. Watkins' home despite his unequivocal non-consent and his physical presence in the home.

*Georgia v. Randolph*, 547 U.S. 103 (2006) clearly established in 2006 that the police cannot enter a home based on consent when the police lack a warrant or an exigency if a physically present resident expressly refuses to consent to the entry. That is exactly what happened here, when Mr. Watkins unambiguously communicated to the police that they could not enter his home shortly before Appellees invaded it.

Appellees seek to avoid the inescapable conclusion that clearly established law compels the denial of summary judgment by trying, unsuccessfully, to distinguish the facts underlying *Randolph* from the instant case. Appellees focus on hypothetical situations that are readily distinguishable from the situation presented, such as the potential need to protect domestic violence victims who are inside the home. Appellees also misstate the holding of the United States Supreme

Court case *Fernandez v. California*, 571 U.S. 292 (2014) and other clearly established law by incorrectly construing such cases in a manner that is implausibly narrow and irreconcilable with clearly established precedent.

### A. **Appellees entered Mr. Watkins' home for reasons wholly unrelated to aiding a victim of domestic violence.**

Appellees contend that "*Randolph* does not clearly extend to consent for entry in aid of victims of domestic violence." Rep.Br. 19. That may be true in circumstances when the victim faces a legitimate threat to their safety. But that is not the scenario presented here. The complainant here, Denise Watkins, was outside of her home and plainly did not face any threat to her safety at any time when the police (repeatedly) entered Mr. Watkins home. No reasonable officer could have concluded otherwise. Nor did Ms. Watkins request police assistance in order to obtain belongings in Mr. Watkins' home, or ask the police to enter Mr. Watkins' home for any safety-related reason.

The Court in *Randolph* supplied examples of domestic violence-related situations when it *could* be reasonable under the Fourth Amendment for the police to enter and potentially search a home, despite conflicting consent between two physically present co-occupants:

> [T]his case has no bearing on the capacity of the police to protect domestic victims. The dissent's argument rests on the failure to distinguish two different issues: when the police may enter without committing a trespass, and when the police may enter to search for evidence. No question has been raised, or reasonably could be, about

the authority of the police to enter a dwelling to protect a resident from domestic violence; **so long as they have good reason to believe such a threat exists**, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. (And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause, see *Texas* v. *Brown,* 460 U.S. 730, 737-739, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (plurality opinion).) Thus, the question whether the police might lawfully enter over objection in order to **provide any protection that might be reasonable** is easily answered yes. See 4 LaFave § 8.3(d), at 161 ("[E]ven when . . . two persons quite clearly have equal rights in the place, as where two individuals are sharing an apartment on an equal basis, there may nonetheless sometimes exist a basis for giving greater recognition to the interests of one over the other . . . . [W]here the defendant has victimized the third-party . . . the emergency nature of the situation is such that the third-party consent should validate a warrantless search despite defendant's objections" (internal quotation marks omitted; third omission in original)). The undoubted right of the police **to enter in order to protect a victim**, however, has nothing to do with the question in this case, whether a search with the consent of one co-tenant is good against another, standing at the door and expressly refusing consent.

547 U.S. at 118-19 (emphasis added).

However, this case bears no resemblance to the scenarios described above in *Randolph*. A reasonable officer in 2018 (when the events underlying Appellant's case occurred) would have understood that the ability of the police to enter a home to protect a victim of domestic violence clearly did not extend to the circumstances underlying Mr. Watkins' case. Even Appellees admit that the police entered Mr. Watkins' home for a reason that had nothing whatsoever to do with protecting a

victim – but, instead, solely to arrest him. Aplt.App.-2-237; Aplt.App.-2-198 ("Q: So the -- really, the whole reason for going into Bryce Watkins' home was to arrest him, right? / A:·Correct. / Q: Any other reason? / A: No."); *see also United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002); *Storey v. Taylor*, 696 F.3d 987, 994 (10th Cir. 2012).

**B.** **Appellees violated clearly established law by entering the home of Mr. Watkins despite knowing that he was a physically present occupant who had recently and explicitly objected to their entry.**

*Randolph* *itself* clearly established the law that Appellees violated by entering Mr. Watkins home. *Randolph* made clear that the police cannot enter a home based on consent when the police lack a warrant or an exigency if a physically present resident expressly refuses to consent to the entry, as Mr. Watkins had done.

With that said, the weight of authority interpreting *Randolph* does reinforce the point that Appellees violated Mr. Watkins clearly established Fourth Amendment rights. *See, e.g.*, *Bonivert v. City of Clarkston*, 883 F.3d 865, 874 (9th Cir. 2018); *United States v. Johnson*, 656 F.3d 375, 377 (6th Cir. 2011); *United States v. Tatman*, 397 F. App'x 152, 161-62 (6th Cir. 2010); *United States v. Montoya*, No. 15-cr-4080 WJ, 2016 U.S. Dist. LEXIS 152828, at *22 (D.N.M. Nov. 2, 2016). For instance, the Sixth Circuit, in *Tatman*, 397 F. App'x at 161-62,

rejected the same, untenably narrow reading of *Randolph* that the District Court

and Appellees incorrectly endorse here:

> The Government relies heavily on *Randolph*'s description of a
> successfully objecting co-tenant as someone who "is in fact at the door
> and objects," rather than "the potential objector, nearby but not invited
> to take part in the threshold colloquy." However, we note that the Court
> varied the language it used to describe a person in the *Randolph*
> defendant's position, indicating that it did not intend the "at the door"
> language to be talismanic.

(internal citation omitted).

In *Bonivert*, 883 F.3d 865, the Ninth Circuit rejected police officers' request

for qualified immunity under the plaintiff's Fourth Amendment claim pursuant to

*Randolph*, where a physically present resident twice objected to officers entering

his home, first by audibly locking the door as an officer was approaching it and

second by attempting to close the door on officers around the time an officer

attempted to enter this home. The court noted as part of its holding that the law is

clearly established that express non-consent can be communicated through non-

verbal conduct. Both Mr. Watkins' verbal and non-verbal conduct plainly

expressed his non-consent here, as Appellees concede.

Moreover, while *Randolph* involved a search for evidence as opposed to a

home entry to make an arrest, the law has long been clear that same Fourth

Amendment principles to both circumstances. The Supreme Court held more than

forty years ago in *Payton* that a "basic principle of Fourth Amendment law [is] that

searches **and seizures** inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined 'exigent circumstances.'" *Payton v. New York*, 445 U.S. 573, 586 n.25 (1980) (emphasis added); *see also Bonivert*, 883 F.3d at 874 (confirming that Fourth Amendment does not draw "talismanic" distinction between entry and search and holding that, "[a]s a matter of clearly established law, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.") (internal citation and quotation marks omitted). Thus, Appellees Nichols and Black violated Mr. Watkins' clearly established rights under the Fourth Amendment when they invaded his home despite being aware of his non-consent to their entry and despite lacking exigency or a warrant. *See also* Op.Br. at 40-43 (describing additional clearly established law Nichols and Black violated)

## C. *Fernandez* addressed a materially different issue: whether *Randolph* applies if the objecting occupant is not physically present at the home when another occupant consents.

Appellees significantly overstate the impact of *Fernandez* on Mr. Watkins' unlawful entry/search claim. As an initial matter, *Fernandez* addressed an issue that is readily distinguishable from the salient issue here. *See Fernandez*, 571 U.S. at 294 ("In this case, we consider whether *Randolph* applies if the objecting occupant is absent when another occupant consents."). Unlike the objecting

occupant in Fernandez, Mr. Watkins *was not* absent from his home when the other occupant consented to the police entering his home.[1]

Additionally, *Fernandez* made clear that *Randolph* was *not* limited to circumstances when the physically present objector is standing near the door. *id*. at 304, 306. Rather, "***Randolph* requires presence on the premises to be searched**." *Fernandez*, 571 U.S. at 306 (emphasis added). Though *Fernandez* does, at times, discuss situations when the physically present resident is located at the threshold of the door, a fair and reasonable reading of the case as a whole is that *Fernandez* describes this circumstance merely because that was what happened in *Randolph*. The Court did not, however, go so far as to limit *Randolph* to scenarios when the resident is literally standing at  the front door. The passage below is illustrative:

> It seems obvious that the calculus of this hypothetical caller would likely be quite different if the objecting tenant was not standing at the door. When the objecting occupant is standing at the threshold saying "stay out," a friend or visitor invited to enter by another occupant can expect at best an uncomfortable scene and at worst violence if he or she tries to brush past the objector. **But when the objector is not on the scene (and especially when it is known that the objector will not return during the course of the visit), the friend or visitor is much more likely to accept the invitation to enter.** Thus, petitioner's argument is inconsistent with *Randolph*'s reasoning.

---

[1] Ms. Watkins, meanwhile, *was* absent from the home. *Fernandez* held that Fourth Amendment considerations related to consent should focus on the physically present co-occupant in such circumstances. Thus, *Fernandez* is best described as *reinforcing* the point that Mr. Watkins' non-consent should have carried the day under the Fourth Amendment.

*Fernandez*, 571 U.S. at 303-04 (emphasis added) (internal footnote omitted). Here and elsewhere, when *Fernandez* refers to a tenant who is not at the door, it is referring to a tenant who is not on scene. *See id.* at 319 (Collecting quotes from *Randolph* demonstrating that physical presence in the home is the controlling requirement, though a few quotes instead focus on "at the door" and objects).

As the Sixth Circuit held in *Tatman*, the at-the-door language is not "talismanic". 397 F. App'x at 161-62. And, as mentioned, *Fernandez* itself explicitly *reaffirmed* that *Randolph* extends to *all* circumstances when the objecting occupant is physically present, at least if the objection was lodged shortly before the entry occurred. Describing *Randolph*, the *Fernandez* Court held that "[t]he Court's opinion went to great lengths to make clear that its holding was limited to situations in which the objecting occupant is present." *Fernandez*, 571 U.S. at 301. The Court in *Fernandez* could have, but (tellingly) *did not*, state that *Randolph* is limited to situations in which the objecting occupant is standing at the door. **Instead, Fernandez described physical presence – *not* standing at the door – as <u>the</u> "controlling factor"**. 571 U.S. at 301 (emphasis added).[2]

### D. <u>Appellees unsuccessfully attempt to complicate matters by introducing hypothetical factual scenarios that are not present here.</u>

---

[2] Courts in this Circuit have likewise confirmed that, after *Fernandez*, physical presence in the home, not "at the door", is still what controls under *Randolph*. *United States v. Montoya*, No. 15-cr-4080 WJ, 2016 U.S. Dist. LEXIS 152828, at *22 (D.N.M. Nov. 2, 2016).

Appellees query how long the objection of a co-occupant remains valid before the police can enter a home based on the consent of another occupant. Rep.Br. 19-20. That point is irrelevant here, though, because Mr. Watkins repeatedly communicated to the police that they lacked authority to enter his home right before they entered his home. There may well be times when the law surrounding competing consent in Fourth Amendment cases is truly murky, but that is simply not the situation presented by this case.

Appellees query how non-consent communicated to one police officer can reasonably be imputed to another officer. Rep.Br. 21. Appellees again try to introduce a complication that is irrelevant. Mr. Watkins directly told Deputy Nichols that the police could not enter his home. Meanwhile, Sergeant Wunderlich is not a defendant under the unlawful entry/search claim for purposes of this appeal.

As for Black, she at one time admitted that Nichols informed her that Mr. Watkins had directly told him that the police could not enter his home. Aplt.App.-2-260 Black IA interview 13:56:15 to 13:56:49. Further, Black and Nichols intentionally muted their body worn cameras shortly before entering Mr. Watkins home, creating a fact dispute about what was said during the conversation. Aplt.App.-2-83, Nichols BWC at 15:55:32; Aplt.App.-2-2-85, Black BWC at 15:55:30. A reasonable jury could find that Nichols made clear to her during this

muted conversation that Mr. Watkins was a physically present occupant who had expressly objected to the police entering his home. This would have been a relevant fact to mention as the two deputies were standing right next to Mr. Watkins' home and preparing to enter it. Further, Appellees concede that they knew Mr. Watkins did not want them in his home before they invaded it. Black (and Nichols) also knew before entering Plaintiff's home for the first time that even Ms. Watkins had not, at that time, explicitly given the police permission to enter Mr. Watkins' home. A jury should be allowed to determine if it was reasonable for Black to enter Plaintiff's garage that was part of his home under the circumstances.

Therefore, Appellant is not attempting to "impute his claimed objection to Deputy Black". Rep.Br. 21. He is seeking to hold her liable based on her own independent knowledge that Mr. Watkins had expressly refused to permit the police to enter his home, and her own independent knowledge that even Ms. Watkins had not explicitly consented to the police entering Mr. Watkins home before she first entered the garage.

Finally, Appellees seek, unsuccessfully, to escape liability by asserting that it is "undisputed that Appellant did not reassert any claimed objection by stating to the Deputies that they needed to stay out or leave when he did encounter them in

the Home." Rep.Br. 22. However, Mr. Watkins *did* in fact reassert his objection to the police entering his home once they were inside by stating, inter alia:

- "Excuse me, you're in my house!"

- "You're in my house!"

- "This is 50% my house! my name is on the title!"

Additionally, when Nichols said that "your wife gave us permission" to be in the home, Mr. Watkins immediately exclaimed "**NO!**". Aplt.App.-2-85, Black BWC at 18:42-20:10; Aplt.App.-2-209.[3] The law is clear that consent – and express lack of consent – to the police entering a home can be communicated non-verbally and officers' perception of consent (or lack thereof) is subject to the Fourth Amendment reasonableness analysis. *See United States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012); *see also Bonivert*, 883 F.3d at 875 (citing *Randolph* and collecting cases); *Vinson v. Vermilion Cty.*, 776 F.3d 924, 930 (7th Cir. 2015); *United States v. Williams*, 521 F.3d 902, 907 (8th Cir. 2008) (citing *Randolph*); *Cummings v. City of Akron*, 418 F.3d 676, 679, 685 (6th Cir. 2005). A rational

---

[3] Mr. Watkins was obviously shocked to see the police in his home even though he had expressly refused to give the police permission to enter his home. Plaintiff did not even more vociferously tell the Appellees to leave his home when he initially encountered them in his home because the Appellees subjected Plaintiff to intense duress by, among other things, pointing multiple weapons (including a deadly weapon) right at him while refusing to explain what they were doing in his house. Appellees intentionally and/or recklessly escalated the situation by refusing to answer Plaintiff's reasonable queries about why the police had invaded his home.

factfinder here could conclude that it was objectively unreasonable for an officer to have believed that Mr. Watkins had *not* revoked Ms. Watkins' consent for the police to enter his home based on his conduct once he observed the police in his home. Finally, as discussed, Appellees admit that they knew Mr. Watkins did not want the police in his home. *See* Rep.Br. 3 ("In short, it simply makes no sense to continue arguing about whether the Deputies knew Appellant did not want them in the house when, for purposes of the relevant Motion for Summary Judgement, hence for purposes of the District Court Order, and hence for purposes of this appeal, the point is already conceded.").

II.    **Appellees, acting in concert, subjected Mr. Watkins to significantly more force than Appellees claim. Mr. Watkins' only so-called resistance before Nichols tackled and choked him consisted of taking a few steps backwards up his stairs. Mr. Watkins' excessive force claim against Nichols, Wunderlich, and Black should not have been summarily judged.**

Appellees misstate the factual and legal basis for Mr. Watkins' excessive force claim against them all. Factually, Appellees significantly overstate Mr. Watkins' alleged resistance before they went hands off with him. Appellees claim that Mr. Watkins "had not complied with verbal orders beginning with the phone call in the park through physically fleeing from the Deputies up the stairs of the Home, into custody for the domestic violence incident between Appellant and his wife." Rep.Br. 26. However, Mr. Watkins was under no legal obligation to comply with verbal orders to leave his home at the time and, therefore, all

"noncompliance" related to such orders did not justify the use of *any* force against

him. *See Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011) ("[I]f an occupant

chooses to open the door and speak with the officers, the occupant need not allow

the officers to enter the premises and may refuse to answer any questions at any

time.").

The only other "resistance" in which Mr. Watkins allegedly engaged before

sheriffs first went hands-off with him occurred right after Nichols tried to grab one

of his arms. Mr. Watkins reflexively shuffled a few steps back up the stairs in

response (after having complied with commands to come all the way down his

stairs). Deputy Nichols then immediately grabbed and tackled Mr. Watkins,

throwing Mr. Watkins down hard to the ground with his back pointed towards the

stairs. At about the same time, Nichols clenched Mr. Watkins' neck with one of his

hands and began to intentionally choke him. Aplt.App.-2-263; Aplt.App.-2-85,

Black BWC at 16:08:24-16:08:39; Aplt.App.-2-207 (Nichols admitting he put hand

on Mr. Watkins' neck). Mr. Watkins did nothing that was threatening at the time.

Mr. Watkins also did nothing indicating that he was attempting to flee his home.

Mr. Watkins clearly was just confused, stunned, and fearful for his life. Aplt.App.-

2-85, Black BWC at 18:51-19:32; Aplt.App.-2-202; Aplt.App.-2-224; Aplt.App.-2-

263.

Under the circumstances, Nichols' forceful takedown of Mr. Watkins and choking of Mr. Watkins constituted force that was disproportionate to the need presented, given that Mr. Watkins had, at worst, only take a few steps backwards on his own staircase. *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991); *Morris v. Noe*, 672 F.3d 1185, 1198 (10th Cir. 2012).

After that, Mr. Watkins instinctually responded to the pain and terror Nichols was unnecessarily inflicting upon him by retreating further up the stairs. This only occurred because the Appellees (all of whom had unreasonably invaded Mr. Watkins' home) "own 'reckless or deliberate conduct during the seizure unreasonably created the need to use . . . force.'" *Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997); *see also Medina v. Cram,* 252 F.3d 1124, 1132 (10th Cir. 2001) (explaining how unreasonable police conduct creating arguable need to use force can itself give rise to excessive force claim); *Rozycki v. City of Champlin*, No. 15–589 (JRT/FLN), 2016 WL 7493619, at *14 (D. Minn. Dec. 30, 2016).

Nichols, Wunderlich, and Black, acting in concert, immediately chased Mr. Watkins up the stairs and Wunderlich deliberately slammed him down very hard to the ground, face first, while he was still on the stairs, and even though his only "resistance" was trying to go upstairs to escape Nichols' excessive use of force. Aplt.App.-2-244-45 (admitting he intentionally tackled Mr. Watkins); Aplt.App.-2-210; Aplt.App.-2-263, in violation of clearly established law. *Morris v. Noe*, 672

F.3d 1185, 1198 (10th Cir. 2012); *Allen*, 119 F.3d at 840. This caused serious additional pain to Mr. Watkins. Mr. Watkins further suffered the profound indignity of his towel falling off his body during this time. Aplt.App.-2-85, Black BWC at 16:08:25-55. He was now completely naked.

Appellees Nichols, Wunderlich, and Black, acting in concert, continued to subject Mr. Watkins to substantial force once he was on the ground (and naked). For example, After Wunderlich slammed Mr. Watkins to the ground on his stairs, Wunderlich admitted to crushing Mr. Watkins under his approximately 255 pounds of body weight, even though Mr. Watkins was not resisting at the time, in violation of clearly established law. Aplt.App.-2-242 (Wunderlich admitting Watkins complied with commands once he went hands on with him); Aplt.App.-2-86, Wunderlich BWC at 16:08:25-16:09:15; *Lynch v. Bd. of Cty. Comm'rs*, 786 F. App'x 774, 778-80, 782 (10th Cir. 2019).

Nichols then intentionally excessively tightly handcuffed Mr. Watkins hands behind his back, while he was still lying naked on the staircase, in violation of clearly established law, *L.A. Cty. v. Rettele*, 550 U.S. 609, 614 (2007); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). This caused significant additional pain and other injuries to Mr. Watkins' wrists. Aplt.App.-2-263; Aplt.App.-2-255-56; Aplt.App.-2-210.

Appellees incorrectly attempt to disaggregate the multiple types of force the Appellees used in concert on Mr. Watkins. However, "because the Appellees here engaged in a group effort, a reasonable jury could find them liable for any underlying finding of excessive force." *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 422 (10th Cir. 2014). Moreover, the sum of the parts of the physical force the Appellees intentionally inflicted on Mr. Watkins in concert substantially, exceeds the effect of any one in isolation. Finally, the failure of any Appellee to intervene to stop their Co-Appellees excessive use of force as described herein supplies a basis for holding them liable under clearly established law, as they could have prevented or stopped the force but did not. *Id*. at 422-23; *see also* Aplt.App.-2-184.

Though Mr. Watkins suffered "unnecessary and severe pain, bruising, and lingering damage to at least his finger", Aplt.App.-3-228, Appellees claim he only suffered de minimis injury. Appellees are wrong based on the foregoing facts. Additionally, the Tenth Circuit emphasized in *Fisher* that a plaintiff need not show "proof of physical injury manifested by visible cuts, bruises, abrasions or scars" to establish a greater than *de minimis* injury. *Fisher v. City of Las Cruces*, 584 F.3d 888, 898-99 (10th Cir. 2009). Actual harm, be it "physical *or* emotional", is sufficient. *Id*. at 897-98 (emphasis added). In addition, to his physical injuries discussed, Mr. Watkins experienced severe psychological trauma from the

16

Appellees subjecting him to a surprise attack inside his own home that they had unreasonably and surreptitiously invaded. Thus, the actual injuries Mr. Watkins suffered as a result of the Appellees collectively subjecting him to excessive force were materially greater than in *Scott v. City of Albuquerque*, 711 F. App'x 871 (10th Cir. 2017), where Scott's excessive force claim was based on unduly tight handcuffing alone, and his injuries solely consisted of wrists that were painful, bruised and swollen for about a week after the arrest.

Critically, *Scott* also reaffirmed that "***Cortez*'s non-de-minimis-injury requirement is limited to handcuffing cases**". *Id*. at 711 F. App'x 880 (citing *United States v. Rodella*, 804 F.3d 1317, 1327 (10th Cir. 2015), *cert. denied*, 137 S. Ct. 37 (2016)). Appellant's excessive force claim is *not* limited to handcuffing and, as such, **the non-de-minimis-injury requirement does not even apply here**. Appellant nonetheless satisfies that requirement, as discussed.

Finally, Mr. Watkins' excessive force claim against Black is not only based on her acting in concert with her co-defendants to subject Mr. Watkins to excessive force on the staircase. His claim against her is also based on her protracted failure after that to loosen Mr. Watkins' handcuffs which she knew to be excessively tight, inflicting actual injuries (including visibly bruised wrists, severe pain, and severe psychological distress) on Mr. Watkins and violating clearly established law.

17

Aplt.App.-2-263; Aplt.App.-2-255; Aplt.App.-2-210; Aplt.App.-2-105-06; *Rettele*,

550 U.S. at 614; *Cortez*, 478 F.3d at 1129.

## CONCLUSION

The District Court's order granting summary judgment to Appellees on

Appellant's unlawful entry/search and excessive claims under the Fourth

Amendment should be reversed, the District Court's entry of judgment in favor of

Appellees should be vacated, and this matter should be remanded to the District

Court for further proceedings consistent with this Court's opinion.

DATED this 16th day of February 2023.

KILLMER, LANE & NEWMAN, LLP

*/s/ Michael Fairhurst*
David A. Lane
Michael Fairhurst
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
(303) 571-1001 facsimile
dlane@kln-law.com
mfairhurst@kln-law.com

ATTORNEYS FOR PLAINTIFF-APPELLANT

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains **4,376** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Date: February 16, 2023.

KILLMER, LANE & NEWMAN, LLP

*s/ Michael Fairhurst*
Michael Fairhurst

*ATTORNEY FOR PLAINTIFF-APPELLANT*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this February 16, 2023, I filed this **PLAINTIFF-APPELLANT'S REPLY BRIEF** via CM/ECF which will generate a Notice of Electronic Filing to the following:

Kelly Dunnaway
Amy Edwards
Office of the Douglas County Attorney
100 Third St.
Castle Rock, CO 80104
kdunnawa@douglas.co.us
aedwards@douglas.co.us

*s/ Michael Fairhurst*
Michael Fairhurst
Killmer Lane & Newman, LLP
